**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GREG ALLEN SIMPSON, | CASE NO. CV 17-1095 SS |
| Plaintiff, | |
| v. | **MEMORANDUM DECISION AND ORDER** |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

**I.**

**INTRODUCTION**

Greg Allen Simpson ("Plaintiff") brings this action seeking to overturn the decision of the Acting Commissioner of Social Security (the "Commissioner" or "Agency") denying his application for Disability Insurance Benefits. The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. (Dkt. Nos. 11-13). For the reasons stated below, the Court AFFIRMS the Commissioner's decision.

## II.

## PROCEDURAL HISTORY

On April 16, 2012, Plaintiff filed an application for Disability Insurance Benefits ("DIB") pursuant to Title II of the Social Security Act alleging a disability onset date of June 1. 2003. (AR 207-08). The Commissioner denied Plaintiff's applications initially and on reconsideration. (AR 75-97). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") (AR 99-100), which took place on May 13, 2015 (AR 49-74). The ALJ issued an adverse decision on June 5, 2015, finding that Plaintiff was not disabled because he was capable of performing his past relevant work as a construction painter. (AR 19-25). On December 14, 2016, the Appeals Council denied Plaintiff's request for review. (AR 1-9). This action followed on February 10, 2017.

## III.

## FACTUAL BACKGROUND

Plaintiff was born on November 19, 1956. (AR 230). He was fifty-eight years old when he appeared before the ALJ on May 13, 2015. (AR 49). Plaintiff completed the eleventh grade and does not have a GED. (AR 67). He is married and lives with his wife. (AR 54-55). Plaintiff last worked in 1999 as a construction painter. (AR 38, 70). He alleges disability due to a broken neck, broken back, nerve damage, depression, anxiety and high cholesterol. (AR 210).

A.  **Plaintiff's Statements And Testimony**

In a July 2013 statement, Plaintiff reported being in a car accident on March 27, 1999. (AR 258). He suffered permanent nerve damage, which leaves him in severe pain on a daily basis even while medicated. (AR 258). Over the last few years, the frequency and level of his pain has increased, even with increased medication dosages. (AR 257-58). Plaintiff is always tired but unable to sleep more than three to four hours. (AR 257-58). He has frequent, severe, uncontrollable spasms in his arms. (AR 258). The pain has caused additional conditions, including erectile dysfunction and depression. (AR 258). In 2010, Plaintiff broke his lower back and wrist falling off the roof of a two-story home. (AR 258). These injuries caused pain in his left leg making it difficult to stand or sit for long periods of time. (AR 258). He has extreme difficulty bending, tying his shoes, cooking, eating, bathing and driving. (AR 258).

Plaintiff testified that he has had ongoing problems since he fractured his neck in a motor vehicle accident in 1999. (AR 51-52). In 2008, he fell off a ladder, fracturing his back in two places. (AR 56-57). Plaintiff has trouble sleeping because of the pain. (AR 59). His pain frequently radiates to his extremities, limiting his ability to use his arms and hold objects. (AR 66).

**B.  Treatment History**

    **1.  Medical Evidence Prior To Alleged Onset Date**

In 1999, Plaintiff was involved in a motor vehicle accident, resulting in a neck fracture and severe neck pain. (AR 615-17). He subsequently was surgically treated with a C5-6 fusion and bone graft. (AR 615-17).

Plaintiff presented to the emergency room on November 6, 2000, complaining of neck soreness and right shoulder stiffness. (AR 351). An x-ray of Plaintiff's cervical spine confirmed the C5-6 fusion but was otherwise unremarkable. (AR 367). No acute compression fractures or subluxations were observed from C1 through T1. (AR 367). No bone destruction or systemic arthritis was seen. (AR 367). Robert E. Krause, M.D., found mild neural foraminal encroachment at C5-6 but the remainder of the neural foramen were symmetrically patent. (AR 367). Dr. Krause concluded that there were no acute bony abnormalities. (AR 367). Plaintiff was prescribed Vicodin and ordered to rest and apply ice to his neck. (AR 350).[3]

In February 2001, Plaintiff presented to the emergency room with lower back pain "after painting all day." (AR 345). He denied any previous lower back pain symptoms. (AR 345). He was diagnosed with a lumbar spine sprain and prescribed Motrin and Vicodin. (AR 345, 347). Plaintiff was fully ambulatory upon discharge. (AR 346).

In June 2002, Plaintiff presented to the emergency room, complaining of swelling in his right leg. (AR 342). An x-ray of Plaintiff's right tibia and fibula from the knee to the ankle joint found no evidence of fracture, malalignment, radiopaque foreign body or soft tissue gas. (AR 366). Plaintiff was discharged home to rest. (AR 342). He was advised to elevate the leg and treat the swollen area with ice. (AR 342).

### 2. Medical Evidence After Date Last Insured

In monthly visits from February through October 2007, Plaintiff reported that his medications were controlling his pain, with no problems sleeping. (AR 535-43). In January 2008, Plaintiff reported that his pain control was "not good" but by March 2008, his pain was back under control with his medications. (AR 529, 531).

On April 28, 2008, Plaintiff was admitted to the hospital after he fell from a ladder at work. (AR 293). Multiple CT scans demonstrated an acute injury of the lumbar spine, with compression deformities. (AR 293). He was discharged on May 2, 2008, with medications to control his pain. (AR 293). On July 30, 2008, Plaintiff had good range of motion and was cleared to return to work. (AR 515). In September 2008, Plaintiff reported "doing well," with his pain being controlled by medications. (AR 513).

In July 2013, Plaintiff injured his thumb after "[m]oving furniture all day." (AR 411). In January 2014, Plaintiff

complained of severe arm pain after "he did a lot of lifting and moving furniture." (AR 396). An examination was largely unremarkable. (AR 396-98). Plaintiff was administered pain medications and advised to follow-up with his primary care physician. (AR 398). By February 2014, Plaintiff's pain had stabilized with his current medications. (AR 389).

C. **State Agency Consultant**

On January 9, 2013, John T. Bonner, M.D., a state agency consultant, reviewed all the available evidence in the medical file. (AR 81-86). Dr. Bonner found that there was insufficient evidence prior to December 31, 2006, the date last insured, of any disabling condition. (AR 86).

**IV.**

**THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents the claimant from engaging in substantial gainful activity and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing work previously performed or any other substantial gainful employment that exists in the national economy. Tackett v. Apfel,

180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.
(3) Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.
(4) Is the claimant capable of performing his past work? If so, the claimant is found not disabled. If not, proceed to step five.
(5) Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54. Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. Id. at 954. If, at step four, the claimant meets his or her burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). The Commissioner may do so by the testimony of a VE or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional (strength-related) and non-exertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert ("VE"). Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).

## V.

## THE ALJ'S DECISION

The ALJ employed the five-step sequential evaluation process and concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 25). At step one, the ALJ found

that Plaintiff has not engaged in substantial gainful activity during the period from June 1, 2003, his alleged onset date, through December 31, 2006, his date last insured. (AR 21). At step two, the ALJ found that Plaintiff's right arm neuropathy and cervical pain syndrome status-post cervical spine injury and fusion are severe impairments. (AR 21). At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of any of the listings enumerated in the regulations. (AR 22).

The ALJ then assessed Plaintiff's RFC and concluded that he can perform light work, as defined in 20 C.F.R. § 404.1567(b),[1] except that Plaintiff is limited to "walking and/or standing for six hours out of an eight-hour workday; and occasional overhead use of bilateral arms." (AR 22). At step four, the ALJ found that Plaintiff is capable of performing past relevant work as a construction painter. (AR 25). Accordingly, the ALJ found that Plaintiff was not under a disability, as defined by the Social Security Act, at any time from June 1, 2003, the alleged onset date, through December 31, 2006, the date last insured. (AR 25).

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

# VI.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Garrison v. Colvin, 759 F.3d 995 (9th Cir. 2014) (citing Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006)); Auckland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. (citing Jamerson, 112 F.3d at 1066; Smolen, 80 F.3d at 1279). To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Auckland, 257 F.3d at 1035 (citing Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21 (citing Flaten v. Sec'y, 44 F.3d 1453, 1457 (9th Cir. 1995)).

## VII.

## DISCUSSION

Plaintiff asserted that he is unable to work due to severe, chronic pain, difficulty sleeping and uncontrollable arm spasms. (AR 53-54, 59, 66, 257-58). He claims that he cannot stand or sit for long periods of time and has extreme difficulty bending, tying his shoes, cooking, eating, bathing and driving. (AR 258).

When assessing a claimant's credibility regarding subjective pain or intensity of symptoms, the ALJ must engage in a two-step analysis. Trevizo v. Berryhill, 874 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine if there is medical evidence of an impairment that could reasonably produce the symptoms alleged. Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014). "In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." Id. (emphasis in original) (citation omitted). "Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof." Id. (citation omitted).

If the claimant satisfies this first step, and there is no evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony about the symptom severity. Trevizo, 874 F.3d at 678 (citation omitted); see also Smolen, 80 F.3d at 1284 ("[T]he ALJ may reject the

claimant's testimony regarding the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so."); Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."). "This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases." Garrison, 759 F.3d at 1015 (citation omitted).

In discrediting the claimant's subjective symptom testimony, the ALJ may consider the following:

> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted). Inconsistencies between a claimant's testimony and conduct, or internal contradictions in the claimant's testimony, also may be relevant. Burrell v. Colvin, 775 F.3d 1133, 1137 (9th Cir. 2014); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir.

1997). In addition, the ALJ may consider the observations of treating and examining physicians regarding, among other matters, the functional restrictions caused by the claimant's symptoms. Smolen, 80 F.3d at 1284; accord Burrell, 775 F.3d at 1137. However, it is improper for an ALJ to reject subjective testimony based "solely" on its inconsistencies with the objective medical evidence presented. Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) (citation omitted).

Further, the ALJ must make a credibility determination with findings that are "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (citation omitted); see Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015) ("A finding that a claimant's testimony is not credible must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.") (citation omitted). Although an ALJ's interpretation of a claimant's testimony may not be the only reasonable one, if it is supported by substantial evidence, "it is not [the court's] role to second-guess it." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ provided two specific, clear and convincing reasons to find Plaintiff's complaints of disabling pain and right arm neuropathy not entirely credible. (AR 23). These reasons are sufficient to support the Commissioner's decision.

The ALJ found Plaintiff not entirely credible because his reported symptoms were inconsistent with "ongoing activities such as climbing roofs and moving furniture." (AR 23). "ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." Garrison, 759 F.3d at 1016. Nevertheless, an ALJ properly may consider the claimant's daily activities in weighing credibility. Tommasetti, 533 F.3d at 1039. If a claimant's level of activity is inconsistent with the claimant's asserted limitations, it has a bearing on credibility. Garrison, 759 F.3d at 1016.

Here, the ALJ determined that despite Plaintiff's alleged disabling pain, right arm neuropathy and difficulty with activities of daily living, he acknowledged activities "that are not consistent with an inability to work, use his arms, and move." (AR 23). In February 2001, Plaintiff presented to the emergency room after admittedly "painting all day." (AR 56, 345).[2] In April 2008, Plaintiff fell off a roof while working. (AR 293). In July 2013 and January 2014, Plaintiff reported minor injuries after lifting and moving furniture all day. (AR 396, 411). The discrepancy between Plaintiff's alleged disabilities and his ongoing activities supports the ALJ's determination that Plaintiff was not entirely credible. See Molina v. Astrue, 674 F.3d 1104,

---

[2] The ALJ misread "painting" as "partying." (Compare AR 56, with id. 345).

14

1112 (9th Cir. 2012) ("ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct"). If a claimant's daily activities are consistent with a work environment, such as painting, then it is reasonable for an ALJ to consider those activities when assessing a claimant's credibility.

The ALJ also identified inconsistencies between Plaintiff's testimony and the objective medical evidence. (AR 20-21). "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1161 (9th Cir. 2008); see Social Security Ruling ("SSR") 16-3p,[3] at *5 ("objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities"). The relevant period for Plaintiff's Title II claim runs from June 1, 2003, the alleged onset date, thought December 31, 2006, the date last insured. (AR 21). As the ALJ observed, there is no treatment documented during the relevant period. (AR 23); (see also id. at 24) (ALJ noting that state agency consultants found insufficient evidence prior to the date last insured); Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175 (9th Cir. 2008) (finding that the medical evidence, i.e., physicians'

---

[3] Social Security Rulings (SSRs) "do not carry the 'force of law,' but they are binding on ALJs nonetheless." Bray, 554 F.3d at 1224. They "reflect the official interpretation of the [Agency] and are entitled to some deference as long as they are consistent with the Social Security Act and regulations." Id. (citation omitted).

opinions that the claimant was able to perform a limited range of work, supported the ALJ's credibility determination). The lack of treatment records during the relevant period suggests that Plaintiff's symptoms were not as severe as he has alleged. See Tommasetti, 553 F.3d at 1039-40 (ALJ may properly infer that claimant's pain "was not as all-disabling as he reported in light of the fact that he did not seek an aggressive treatment program"). Further, in monthly visits during February through October 2007, Plaintiff reported that his medications were controlling his pain, with no problems sleeping. (AR 535-43); see Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."). In July 2008, Plaintiff had good range of motion and was cleared to return to work. (AR 515). While these records are after his date last insured, they provide strong circumstantial evidence that Plaintiff's impairments were not disabling within the relevant time period. See Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment.") (citation omitted); Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999), as amended (June 22, 1999) ("Meanel's claim that she experienced pain approaching the highest level imaginable was inconsistent with the 'minimal, conservative treatment' that she received."). The ALJ properly could find, after considering Plaintiff's sparse and conservative treatment history, that Plaintiff's testimony and statements regarding his disabling pain were not entirely credible.

Plaintiff contends that "the ALJ simply rejects [his] testimony based on a belief that the testimony is not credible because it lacks support in the objective medical evidence." (Dkt. No. 20 at 6-7). While the ALJ "may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the claimant's allegations," Bray, 554 F.3d at 1227, the ALJ "must consider whether an individual's statements about the intensity, persistence, and limiting effects of his or her symptoms are consistent with the medical signs and laboratory findings of record," SSR 16-3p, at *5 (emphasis added). Here, the ALJ did not reject Plaintiff's subjective symptoms because of a lack of evidence to support Plaintiff's allegations. Instead, the ALJ discredited Plaintiff's subjective symptoms because they were inconsistent with his conservative treatment and his reports to treating sources that his medications were controlling his pain.

Plaintiff also asserts that his "descriptions of his limitations demonstrate that she [sic] is incapable of maintaining substantial gainful work activity because of her [sic] severe impairments." (Dkt. No. 20 at 8). However, other than his own subjective allegations, which the ALJ properly discredited, Plaintiff does not demonstrate how his right arm neuropathy and cervical pain syndrome status-post cervical spine injury and fusion limited his ability to work during the relevant time period. See Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) ("It was [claimant's] duty to prove that she was disabled.") (citing 20 C.F.R. § 404.1512(a)); see also Terry v. Sullivan, 903 F.2d 1273,

1275 (9th Cir. 1990) ("The burden of establishing disability is . . . on the claimant, who must prove that she is unable to return to her former type of work."). In assessing Plaintiff's RFC, the ALJ, despite the sparse evidence in the record, gave partial credit to Plaintiff's testimony and "generous consideration to [Plaintiff's] history of back and neck surgery and neuropathy." (AR 23). Plaintiff cites to <u>no</u> medical evidence indicating that Plaintiff's right arm neuropathy and cervical pain syndrome status-post cervical spine injury and fusion, which the ALJ found to be severe, limit his functional capacity more than the limitations found by the ALJ.

In sum, the ALJ offered clear and convincing reasons, supported by substantial evidence in the record, for his adverse credibility findings. Accordingly, because substantial evidence supports the ALJ's assessment of Plaintiff's credibility, no remand is required.

# VIII.

# CONCLUSION

Consistent with the foregoing, IT IS ORDERED that Judgment be entered AFFIRMING the decision of the Commissioner. The Clerk of the Court shall serve copies of this Order and the Judgment on counsel for both parties.

DATED: December 15, 2017

/S/
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS OR ANY OTHER LEGAL DATABASE.**